UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:09CR0723 CAS (AGF) |
| JEFFREY WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the pretrial motions filed by Defendant, Jeffrey Wilson. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and statements and a motion to re-weigh and re-test the controlled substance at issue. (Doc. Nos. 14 and 17).

An evidentiary hearing was held on January 29, 2009. The United States was represented by Assistant United States Attorney Eliza Williams. Defendant was present and represented by his attorney, William Goldstein. At the hearing, the United States presented the testimony of Tod Plumb, who has been a police officer with the City of Breckenridge Hills for over three years. The witness was cross-examined extensively by defense counsel. The parties filed post-hearing memoranda, after which the matter was taken under submission. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the

undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On the evening of February 6, 2009, Officer Plumb was on special duty with his partner Officer Thomas. They had been directed to patrol West Milton Avenue in response to reports by residents of drug problems on the street. They were driving either a marked car, or an unmarked car that had a light rack on the inside, and were not in formal uniform but were wearing clothing that clearly identified them as police officers. At approximately 6:00 p.m. the officers were driving south on West Milton, and as they approached the 3300 block, they observed a purple Dodge sedan that was stopped in the middle of the street. There were pedestrians on both sides of the car, and they observed one of the pedestrians lean in the passenger side of the car and have some form of interchange with the driver, later identified as Defendant Wilson. Officer Plumb could not see whether anything actually changed hands between them.

West Milton is a one-way street in that area, and the officers had to stop or slow their vehicle because Defendant's car was blocking the street, which Officer Plumb knew was a traffic violation. Defendant then drove on and the pedestrians disbursed. The officers followed Defendant for a few hundred feet, intending to conduct a traffic stop, but Defendant came to a stop at the stop sign at the corner of West Milton and Bradley. He then put his car in reverse and began to back up toward the front of the officers' car. As Defendant continued slowly edging toward their car, the officers activated their lights and siren, and Defendant's car stopped within a few inches of their car.

Officer Plumb used the public address system in their car and directed Defendant to put his car in park, but it appeared that Defendant did not comply, because the officers could still see Defendant's reverse lights illuminated. Using the public address system, the officer directed Defendant to put his car in park several more times, but again Defendant did not comply. During this time, the officers could see Defendant moving furtively in the car. He appeared to lift up his buttocks, and was moving his arms and leaning as though he was grabbing something from between the seats or placing something between the seats.

Officer Plumb approached Defendant's car, while his partner remained in their vehicle at the radio. He introduced himself and advised Defendant that he had stopped him for two violations: impeding the flow of traffic and improper backing up. At that point, Officer Thomas yelled to him that Defendant's car was still in reverse, and Officer Plumb directed Defendant to put his car in park. Defendant responded with curse words and said the car was in park. Because there was a bag of take-out food on top of the console that prevented him from seeing the gear shift, Officer Plumb asked Defendant to move the bag. Defendant moved the bag, and they saw that the car was still in reverse. Officer Plumb again asked Defendant to put the car in park, and this time Defendant complied.

The officer asked to see Defendant's license and proof of insurance. Defendant did not produce either document, but rather again cussed and said something like, "You are always messing with me." The officer asked Defendant his name and address, and

3

Defendant said his name was Jeff and that he lived in St. Charles.  The officer asked what he was doing on West Milton, and he responded that he was visiting a friend.  When he asked the name of the friend, Defendant just shook his head.

At this point, Officer Plumb asked Defendant to exit the car for officer safety, and directed him to walk to the officers' car and put his hands on the car.  Defendant complied.  Defendant was wearing baggy clothing, and Officer Plumb was concerned that Defendant might have a weapon based on Defendant's furtive movements in the car and his other suspicious and non-compliant actions.  As he started to pat down Defendant's left front pant pocket, Defendant took his hand off of the front of the officers' car and began to turn toward the officer.  Officer Plumb ordered Defendant to face the vehicle.  As he resumed his pat-down, Defendant again took his hand off the car and turned, one or two more times.  Officer Plumb said something like, "Jeff, this is a simple traffic stop.  Don't get yourself arrested over a traffic stop."  At that point, Defendant put his hands back on the officers' car and appeared to relax somewhat.

As Officer Plumb began to pat-down Defendant's right pant pocket, Defendant turned to the left, elbowed the officer in the lips, and began to run off.  Officer Plumb grabbed Defendant's shirt, and Officer Thomas ran over and grabbed Defendant, who was approximately 6'1" tall, and weighed approximately 240-250 pounds.  Some 40 to 50 feet east of the car, the two officers were able to force Defendant to the ground, which took approximately 10 to 15 seconds to accomplish.  While on the ground, Defendant continued to resist and refused to put his hands behind his back.  While they were

attempting to secure Defendant, he got up and attempted to flee four or five more times.

At one point, while Defendant was laying prone with his arms stretched over his head, the officers finally succeeded in cuffing him in front. Officer Thomas returned to their car and radioed for assistance. Officer Plumb searched Defendant incident to his arrest, and in his right front pocket found a clear plastic baggie containing several off-white chunks, which he recognized as crack cocaine, and $1,050 in cash. Other officers arrived at the scene and assisted in securing Defendant with his hands cuffed in back. Defendant was transported to the police station and booked. Apart from the discussion that took place while Defendant was in his own car, the officers did not attempt to question Defendant, and he did not make any further statements.

Defendant was issued traffic citations for impeding traffic, improper backing, assault on a law enforcement officer, failure to comply with officer directives, and failure to provide proper proof of insurance. Def. Ex. A. Because Officer Plumb's cell phone was broken during the struggle, Defendant was also issued a citation for property damage.

## CONCLUSIONS OF LAW

Defendant asserts that the traffic stop was unlawful because the officers did not stop Defendant for the traffic violations, but rather improperly stopped him in connection with their investigation of narcotics activity on the street; and that they were not authorized to remove him from the car or conduct a pat-down search. He further contends that his statements at the scene are subject to suppression because he was not advised of his <u>Miranda</u> rights. The Court finds these arguments lack merit.

## I. MOTION TO SUPPRESS

### A. <u>Validity and Scope of the Stop</u>

The law is clear that when a police officer observes a traffic violation – however minor – he has probable cause to stop the vehicle. <u>Whren v. United States</u>, 517 U.S. 806, 818 (1996); <u>United States v. Martin</u>, 411 F.3d 998, 1000 (8th Cir. 2005). "This is true even if a valid traffic stop is a pretext for other investigation." <u>United States v. Linkous</u>, 285 F.3d 716, 719 (8th Cir. 2002). Here, the officers personally observed two traffic offenses committed by Defendant, and as such, had probable cause to stop the car.

Once an officer has a right to stop a driver, the officer may "conduct an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.'" <u>United States v. Bloomfield</u>, 40 F.3d 910, 915 (8th Cir. 1994) (<u>quoting</u> <u>United States v. Cummins</u>, 920 F.2d 498, 502 (8th Cir. 1990)). "This reasonable investigation includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." <u>Id.</u>; <u>United States v. Jones</u>, 269 F.3d 919, 924-25 (8th Cir. 2001). Officer Plumb was therefore justified in requesting Defendant's license and registration, inquiring the purpose of his trip, and in requesting him to step out of the car. <u>Arizona v. Johnson</u>, __ U.S. __, 129 S.Ct. 781, 786 (2009); <u>United States v. Pulliam</u>, 265 F.3d 736, 740 (8th Cir. 2001); <u>United States v. Winters</u>, 221 F.3d 1039, 1041 (8th Cir. 2000).

The law is also clear that when "'the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may

broaden his inquiry and satisfy those suspicions.'" United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)). Police officers may briefly detain an individual for an investigative purpose when they have a reasonable belief that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). The reasonable belief requires suspicion based on "'particularized, objective facts which, when taken together with rational inferences from those facts, reasonably warrant[] suspicion that a crime [is] being committed.'" United States v. Beck, 140 F.3d 1129, 1136 (8th Cir. 1998) (quoting United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)). While reasonable suspicion requires "more than an inchoate 'hunch,' the Fourth Amendment only requires that the police articulate some minimal, objective justification for an investigatory stop." United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009) (quoting United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004)).

When an officer develops reasonable, articulable suspicion of criminal activity during a traffic stop, he is justified in making a greater intrusion unrelated to the traffic offense. United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995); Bloomfield, 40 F.3d at 918. Officers are "permitted 'to graduate their responses to the demands of the particular situation.'" Pereira-Munoz, at 791 (quoting United States v. Place, 462 U.S. 696, 710 n.10 (1983)). The reasonable suspicion is assessed in light of the totality of the circumstances, taking into consideration the officers' experience. Id.

7

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. . . . [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

Florida v. Royer, 460 U.S. 491, 500 (1983). See Bloomfield at 916; United States v. Willis, 967 F.2d 1220, 1224 (8th Cir. 1992).

Here, the officer had reasonable suspicion to expand the scope of the stop and order Defendant out of the car based on his suspicious conduct in backing up his car, his refusal to put the car in park, his furtive movements in the car, his abusive and non-compliant responses, and his inability or unwillingness to produce his license and registration. Moreover, while the officers had not observed any actual narcotics transaction by Defendant, all of this conduct occurred after Defendant had been observed engaging in actions consistent with a street sale of narcotics. As such, neither their questions to the Defendant nor their actions requiring him to step out of the car exceeded the scope of the stop. See Walker, 555 F.3d at 720-21.

> The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally the stop ends when the police have no further need to control the scene and inform the driver and passengers they are free to leave. . . . An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. . . .

Arizona v. Johnson, 129 S.Ct. at 788 (citations omitted); accord United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007) (holding that officer did not effect an

unreasonable seizure "by asking three brief questions related to possible drug trafficking amidst his other traffic-related inquiries and tasks").

The officer was also justified in conducting a pat-down for weapons. During a traffic stop, an officer may frisk a suspect to protect himself and preserve the status quo, if he has "a reasonable, articulable suspicion" the individual may be armed and dangerous. See Arizona v. Johnson, 129 S.Ct. at 784; United States v. Banks, 553 F.3d 1101, 1105 (8th Cir. 2009); United States v. Oliver, 550 F.3d 734, 737-38 (8th Cir. 2008). "Under this objective test the 'officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" Banks, 553 F.3d at 1105 (quoting Terry, 392 U.S. at 27); see also Walker, 555 F.3d at 721 (holding that during a Terry stop, officers are permitted to check for weapons and to take any additional steps reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop).

Given Defendant's behavior, including his refusal to put the car in park, his abusive responses, his furtive movements inside the car, and the fact that he was wearing baggy clothing, the officer was justified in conducting a pat-down search. See Oliver, 550 F.3d at 738-39 (holding that officer was justified in conducting pat-down search during course of traffic stop, late at night, where vehicle failed initially to stop, driver threw keys on roof, defendant's hands were shaking and he was fidgeting with front pocket of hooded sweatshirt).

9

Rather than permit the pat-down, the Defendant resisted, then assaulted the officer and attempted to flee. At this point the officers plainly had probable cause to arrest Defendant. Following his arrest, the officers were authorized to conduct a search incident to his arrest. United States v. Robinson, 414 U.S. 218, 235 (1973). As such, the crack cocaine and currency were lawfully discovered and seized in a search incident to Defendant's arrest.

### B. Statements Made by Defendant at the Scene

Defendant asserts that the statements he made while seated in his own car should be suppressed because the officers did not advise Defendant of his Miranda rights. The Supreme Court has recognized that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). However, "'most Terry stops do not trigger the detainee's Miranda rights.'" United States v. Martinez, 462 F.3d 903, 909 (8th Cir. 2006), cert. denied, 549 U.S. 1272 (2007) (quoting United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003)).

On these particular facts, the officer was not required to advise the Defendant of his rights under Miranda prior to his formal arrest. All of the questioning pertained to the stop or was directly related to the officer's reasonable suspicions. The questioning took place over just a few minutes, and was no longer than was necessary to address the officer's suspicions. Under the totality of the circumstances, the Court finds that

Defendant was not in custody for purposes of Miranda, and his statements made prior to his formal arrest are not subject to suppression. See Pelayo-Ruelas, 345 F.3d at 593 (holding that where defendant was removed from car and patted down in connection with drug investigation, Miranda warnings were not required and statements were not subject to suppression, where only one agent approached and questioned defendant, agent was in plain clothes and did not draw weapon, atmosphere was like typical traffic stop, and investigation was reasonably limited to confirming or dispelling suspicions).

### II. MOTION TO RE-WEIGH AND RE-TEST

Defendant also filed a motion to re-weigh and re-test the controlled substances seized, based in part on the fact that the cocaine base was reported to weigh .1 grams over the five gram quantity alleged in the indictment. The United States objected, asserting that what is relevant is the weight at the time of arrest, not the weight now, which may be impacted by evaporation. The United States further contends that the chemists should not be burdened with this task where there has been no evidence that any mistake was made in the initial testing.

The Court does not find the objections of the United States to be persuasive. Whether any differing weight found as a result of new testing is relevant and admissible is a matter for the trial judge. Moreover, the request is not a burdensome or unreasonable one. At the hearing, the parties were directed to attempt to agree on the laboratory that would perform the weighing and testing, and conditions under which the testing would be performed, and to promptly advise the Court if they were unable to reach an agreement.

As the Court has not been notified of any dispute, it shall assume that the parties reached an agreement regarding the manner of testing.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. No. 14] be **Denied**.

**IT IS HEREBY ORDERED** that Defendant's Motion to Re-Weigh and Re-Test the Controlled Substance [Doc. No. 17] is **Granted**.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 24th day of February, 2010.